Case: 4:16-cv-01073-AGF   Doc. #:  1   Filed: 07/01/16   Page: 1 of 9 PageID #: 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RoadSafe Traffic Systems, Inc. ) | |
| ) | |
| Plaintiff, ) | Case No.:  16 -_____ |
| vs. ) | |
| ) | |
| The Competitor Group, Inc. ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT AT LAW AND JURY DEMAND

NOW COMES, the Plaintiff, ROADSAFE TRAFFIC SYSTEMS, INC. ("RoadSafe") by and through its attorneys at Swanson, Martin & Bell, LLP, and for its Complaint at Law against the Defendant, THE COMPETITOR GROUP, INC. ("The Competitor Group") and upon information and belief, states as follows:

### JURISDICTION AND VENUE

1. This action is brought by RoadSafe Traffic Systems, Inc., a Delaware corporation duly registered to conduct business in Missouri, under diversity jurisdiction pursuant to 28 U.S.C. § 1332 for money damages in excess of $75,000 for breach of contract and unjust enrichment caused by The Competitor Group, a California corporation.

2. Venue is proper in that all or substantially all of the acts forming the basis of the claims herein occurred in St. Louis, Missouri, which is located in the Eastern District of Missouri and arose from, or are related to, The Competitor Group's breach of its contract with RoadSafe in connection with RoadSafe's traffic control and rental services provided and performed in connection with the 2014 St. Louis Rock'n'Roll 5K race and Marathon held on October 18 and 19, 2014, in St. Louis, Missouri.

## PARTIES

3. At all relevant times, the Plaintiff, RoadSafe Traffic Systems, Inc. was and is a Delaware Corporation duly registered to conduct business in the State of Missouri. RoadSafe's Branch Office in Missouri is located at 8000 Hall Street, Building 12, St. Louis, MO 63147.

4. At all relevant times, the Defendant, The Competitor Group was and is a California corporation with its corporate headquarters located at 9477 Waples Street, San Diego, California 92121.

5. The Competitor Group created the Rock'n'Roll Marathon Series where it has held, organized, scheduled, directed, coordinated, managed, controlled and oversaw marathon and race events around the United States and internationally. Namely, The Competitor Group has held marathons in St. Louis, Missouri; Phoenix, Arizona, New Orleans, Louisiana; Washington, D.C.; Dallas, Texas; Carlsbad, California; San Francisco, California; Raleigh, North Carolina; Nashville, Tennessee; San Diego, California; Seattle, Washington; Chicago, Illinois; Virginia Beach, Virginia; Philadelphia, Pennsylvania; San Jose, California; Brooklyn, New York; Denver, Colorado; Los Angeles, California; Savannah, Georgia; Las Vegas, Nevada; and San Antonio, Texas.

6. The Competitor Group has also hosted Rock'n'Roll Marathon events in various locations in Canada, Mexico, Portugal, Spain, England and Ireland.

7. Over 500,000 race participants have enrolled and participated in the Rock'n'Roll Marathons held by The Competitor Group over the years.

8. These race participants have paid The Competitor Group to race in these marathons and events. Upon information and belief, The Competitor Group obtains revenue from the race registration fees and from advertising and sponsorships.

9. The Competitor Group promotes its Rock'n'Roll Marathon Series as the world's largest running tour.

10. The Competitor Group has held Rock'n'Roll Marathon events in St. Louis since 2010, and is scheduled to hold races again in St. Louis in October of 2016.

11. In order for The Competitor Group to hold the 5K race and Rock 'n' Roll marathon in St. Louis in 2014, traffic control services needed to be provided in order to provide the race participants a safe route of travel on the streets of St. Louis and to ensure that automobiles and other motorized vehicles would not interfere with the use of the roadways by the race participants.

13. Upon information and belief, The Competitor Group collected non-refundable registration fees from the participants who entered and participated in the 5K and marathon held in St. Louis on October 18 and 19, 2014.

## COUNT I – BREACH OF CONTRACT

14. At all relevant times in 2014, the Defendant, The Competitor Group was a California corporation that conducted business in St. Louis, Missouri.

15. At all relevant times in 2014, The Competitor Group, acting by and through its employees and agents coordinated, directed, managed, oversaw and controlled a 5K run on Saturday, October 17, 2014 and a full 26 mile "Rock 'n' Roll" marathon on Sunday, October 18, 2014 in St. Louis, Missouri.

16. On or about September 15, 2014, RoadSafe sent a bid proposal to The Competitor Group to perform traffic control services for the aforementioned 5K run and 26 mile Rock 'n" Roll marathon. RoadSafe offered to perform traffic control services for the Sunday full marathon for the cost of $97,000.00. RoadSafe further offered to perform traffic control service

3

for the 5K run for the cost of $11,200.00. The total cost for the traffic control services offered by RoadSafe for both events was $108,200.00. (RoadSafe's bid proposal attached hereto as "Exhibit A"). In addition, noted at the bottom of RoadSafe's bid proposal was the pricing for additional traffic control devices which would and could be provided by RoadSafe if and when authorized by The Competitor Group and/or Missouri Department of Transportation ("MODOT").

17. On September 28, 2014, The Competitor Group, by and through its authorized employees and agents, including Ian O'Bryon, agreed to RoadSafe's bid proposal and executed the contract on behalf of The Competitor Group. A copy of the September 28, 2014 contract (hereinafter referred to as the "contract") entered into between RoadSafe and The Competitor Group is attached hereto as "Exhibit B."

18. In October of 2014, prior to the 5K race and marathon, The Competitor Group met with representatives of the City of St. Louis, the St. Louis Police Department, MODOT, RoadSafe, and other entities to go over the logistics and details for the races during a pre-race meeting for street closures and the placement of traffic control devices including cones, barricades, signs and arrow boards. During the meeting, Missouri Department of Transportation requested additional signs and traffic control equipment to be placed at the race site.

19. Per MODOT's directive, The Competitor Group requested that RoadSafe provide an additional 368 traffic control signs and 6 arrow boards for the races. As RoadSafe had already provided pricing for these items in the initial bid proposal, it was agreed among the parties that the items would be billed as quoted.

20. The Competitor Group verbally agreed to pay RoadSafe an additional $9 for each sign provided and $150 rental charge for each of the arrow boards. In total, The Competitor

Group agreed to rent additional arrow boards for $900 and agreed to rent the signs for $3,312.00. The total rental charges for the additional signs and arrow boards was $4,212.00.

21. On October 18, 2014, the 5K race was held and completed. RoadSafe provided traffic control services for the race in accordance with its contract and as requested by The Competitor Group.

22. The 5K race could not have been held and completed if RoadSafe did not perform its traffic control services as agreed to under the contract and as requested by The Competitor Group.

23. On October 19, 2014, the full 26 mile Rock 'n" Roll marathon was held and completed. RoadSafe provided traffic control services for the marathon in accordance with its contract with The Competitor Group and as requested by The Competitor Group.

24. The marathon could not have been held and completed if RoadSafe did not perform its traffic control services as agreed to under the contract and as requested by The Competitor Group.

25. RoadSafe fully performed its traffic control services and rental services under all the terms and conditions of the contract entered into with The Competitor Group for the 5K and marathon and as requested by The Competitor Group.

26. As a result, the Competitor Group was required to pay RoadSafe for the traffic control services that it provided pursuant to the original quote in the amount of $108,200.00 in addition to $4,212.00 for the rental of the additional arrow boards and signs for a total amounted owed to RoadSafe of $112,412.00.

27. At no point has the Competitor Group disputed the fact that the subject traffic control devices, signs or materials were provided for the 5K race and the marathon.

28. RoadSafe relied on The Competitor Group in good faith to pay it for the amount specified under the contract and as requested by The Competitor Group in connection with the traffic control services and rental services it performed and provided.

29. The Competitor Group has refused to pay RoadSafe for aforementioned traffic control and rental services performed in October of 2014, even though RoadSafe has demanded payment on several occasions.

30. As a result of The Competitor Group's failure to abide by the terms and conditions of the contract, RoadSafe has suffered damages in the amount of $112,412.00, which is in excess of the jurisdictional limits of $75,000.00.

WHEREFORE, Plaintiff, ROADSAFE TRAFFIC SYSTEMS, INC, requested this Court enter judgment against The Competitor Group in the amount of $112,412.00, its court costs, statutory fees, and any pre-interest judgment allowed by law and any further relief as the Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT

31. RoadSafe realleges, restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 30 of the Complaint as if fully set forth herein.

32. RoadSafe contracted with The Competitor Group for traffic control services and rental services performed for the 5k race and a marathon held in October of 2014, in the amount of $112,412.00.

33. The charges rendered by RoadSafe were reasonable and were agreed to by the parties.

34. The Competitor Group has been unjustly enriched as it received the benefit of the traffic control and rental services provided by RoadSafe without paying for those services.

35. The aforementioned 5K race and the marathon in October of 2014 could not have commenced and proceeded without the traffic control and rental services provided by RoadSafe.

36. RoadSafe has performed all conditions necessary to the enforcement and collection of these sums of money.

37. Demand has been made upon The Competitor Group by RoadSafe for payment of the aforementioned sum that is due and owing.

38. The Competitor Group has refused and continues to refuse to pay RoadSafe for the traffic control services and rental services that were provided.

39. As a direct and proximate result of the failure by The Competitor Group to pay RoadSafe, RoadSafe has been damaged in the amount of, and there remains due and owing to RoadSafe from The Competitor Group, the sum of $112,412.00.

40. Further, RoadSafe has incurred attorney's fees and the cost of collection in its efforts to collect the amounts due and owing for its reasonable services rendered to The Competitor Group.

WHEREFORE, Plaintiff, ROADSAFE TRAFFIC SYSTEMS, INC, hereby prays this Honorable Court for judgment in favor of it and against The Competitor Group and the principal sum of $112,412.00, its court costs, statutory fees, and any pre-interest judgment allowed by law and any further relief as the Court deems just and proper

**ROADSAFE DEMANDS A TRIAL BY JURY**

        Respectfully submitted,

        **SWANSON, MARTIN & BELL, LLP**

By: /s/ Marcie J. Vantine
      Attorney for Plaintiff
      RoadSafe Traffic Systems, Inc.

Marcie J. Vantine
**SWANSON, MARTIN & BELL, LLP**
800 Market St.
Suite 2100
St. Louis, MO 63101
(314) 241-7100
mvantine@smbtrials.com

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

| | |
|---|---|
| RoadSafe Traffic Systems, Inc. <br> *Plaintiff* <br> v. <br> The Competitor Group, Inc. <br> *Defendant* | ) <br> ) <br> ) Civil Action No. 16 - <br> ) <br> ) |

## WAIVER OF THE SERVICE OF SUMMONS

To: The Competitor Group, Inc.
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from __07/01/2016__, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: 07/01/2016

_____
*Signature of the attorney or unrepresented party*

The Competitor Group, Inc.
*Printed name of party waiving service of summons*

Printed name
The Competitor Group, Inc.
9477 Waples Street
San Diego, CA 92121
*Address*

*E-mail address*

*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.